[No. 20136.   Department Two.   January 24, 1927.]

FRANK SHERRIN et al., Respondents, v. PHILIP GEVURTZ
et al., Appellants.[1]

[1] FRAUD (7, 8)—RELIANCE ON REPRESENTATIONS—DUTY TO IN-
VESTIGATE.   The purchaser of apartment house furniture and
lease has a right to rely upon representations as to the number
of rooms rented and the income therefrom and as to the
furnishings in rooms which it was stated could not be shown
but were similar to other rooms shown.

[2] PLEADINGS (171)—ISSUES—PROOF AND VARIANCE—FRAUD.   In an
action for fraud inducing the sale of apartment house furnish-
ings and lease, it is not a fatal variance to allege that the false
representations were made by the brokers and to prove that
the representations were made by the persons themselves.

[3] TRIAL (101)—INSTRUCTIONS—ALREADY GIVEN.   It is not error
to refuse requested instructions which are sufficiently covered
in other instructions.

[4] CORPORATIONS (100)—MEMBERS AND STOCKHOLDERS—LIABILITY
FOR CORPORATE ACTS—HOLDERS AND OWNERS OF STOCK.   Defend-
ants, charged with false representations, cannot avoid liability
on the ground that the representations were made by a cor-
poration owning the property, where it appears that they were
the owners of its capital stock and controlled it and were
financially interested in the transaction sued on, and that the
misrepresentations were made for their benefit.

[5] FRAUD (23)—DAMAGES (74)—MEASURE—LOSS OF PROFITS.   In
an action for damages for false representations inducing the
purchase of apartment house furnishings and lease, the meas-
ure of damages is the difference between the value of the
property transferred at the time of the sale and what its value
would have been if as represented, and it is error to allow
damages for what the net profits would have been had the
representations been true.

[1]Reported in 252 Pac. 683.

Appeal from a judgment of the superior court for King county, Kuykendall, J., entered April 13, 1926, upon the verdict of a jury rendered in favor of the plaintiffs, in an action for damages. Modified.

*Carkeek, McDonald, Harris & Coryell,* for appellants.

*J. H. Cannon,* for respondents.

BRIDGES, J.—This is a suit for damages because of alleged misrepresentations concerning an apartment house in Seattle, the lease of and furniture in which were purchased by the plaintiffs.

Samuel Weinstein was the owner of the premises known as the Alexander Apartments. He had leased them to the Welch Hotel Company, a corporation. That company was organized in the interest of, and its stock owned by, the Gevurtz Furniture Company, a corporation, of which the defendants were the owners of the capital stock.

It is alleged in the complaint that the defendants owned and controlled the lease of and the furniture in the apartments, and that they had listed the same with the firm of Rogers & Fuller, brokers, of Seattle, for sale for seven thousand five hundred dollars; that these brokers, as well as the defendants, represented to the plaintiffs that there were sixteen apartments in the house, ten of which were furnished and six unfurnished; that all of such apartments were rented and occupied with the exception of two, and that the furnished apartments were regularly rented at sixty-five dollars per month, and all occupied except one; that the unfurnished apartments were regularly rented at fifty dollars a month, except one which was rented at forty dollars, and that all of the unfurnished apart-

ments were at that time rented and occupied except one; that the property was regularly netting a profit of four hundred dollars a month. It was further alleged that many of the apartments were not rented at all, and that those which were occupied were rented at a figure materially less than that represented, and that the property was not making, had not made and could not be made to make four hundred dollars a month net profit; that relying upon the representations thus made the plaintiffs agreed to and did purchase the leasehold interest and the furniture. They paid seven thousand five hundred dollars, two thousand dollars of which was cash, and the balance was to be paid in monthly instalments. The hotel company assigned the lease to the plaintiffs and gave them a bill of sale of the furniture, and they gave back a chattel mortgage to secure the payment of the balance owing. They operated the apartments for one month, then fell behind with their rent and were ejected by the owner of the premises.

The jury returned a verdict for the plaintiffs in the sum of six thousand fifty dollars. Thereafter, the trial court ordered that a new trial would be granted unless the plaintiffs consented to a reduction of the verdict to the sum of four thousand five hundred dollars. The consent being given, judgment was entered for the last named sum, and the defendants have appealed.

Appellants first contend that the evidence fails to show that there were any false or fraudulent representations. This position cannot be sustained. Both of the respondents testified that the representations as alleged in the complaint had been made, were relied on by them and that they were untrue. While the appellants introduced testimony strongly tending to dispute that of the respondents, yet it was for the jury to determine who was telling the truth.

[1] It is also argued that the respondents did not rely on the representations, because they made an independent examination of the apartment house before they purchased. There was much testimony to support this contention, but there was also testimony to the contrary. The respondents testified that they visited the apartments with one of the brokers; that they were shown into one or two of the rooms and were told that the others were similarly furnished, but were occupied by tenants who did not wish to be disturbed by visitors. Under these circumstances, respondents had a right to rely on the representations alleged to have been made.

[2] It is contended that there is a fatal variance between the proof and the pleadings because it is alleged in the complaint that the brokers had made the representations complained of, while the court permitted the respondents to testify that the defendants themselves also made certain of the representations, or repeated those made by their agents. It would be immaterial whether the representations were made by the appellants themselves or their agents. The result would be the same. Consequently, there was no material variance.

[3] It is next claimed that the court erred in giving its instruction No. 7½ concerning the rights of persons who have made an independent investigation. While the instruction given was not very well worded, yet we cannot see that it is open to the objections made to it. In this connection, the appellants contend that one of their requested instructions should have been given covering the same subject. While the submitted instruction may be unobjectionable, yet we think it was fully covered by the court's instructions Nos. 7 and 7½, and that there was no error in refusing to give the request.

[4] The complaint alleged that the appellants were the owners of the lease and the furniture in question and sold them to the respondents. The proof showed that the Welch Hotel Company owned this property and that the respondents bought of it. Appellants here claim that if they made any misrepresentations concerning the property involved, they did so on behalf of the owner, to wit, the Welch Hotel Company, and that it alone would be liable. But the testimony shows that the hotel company was organized at the instance and for the benefit of the appellants and that they were the owners of its capital stock and controlled it. They were, therefore, financially interested in the transaction here sued upon and would be personally liable for any fraudulent misrepresentations which they may have made and upon which reliance was placed.

[5] It is next claimed that there was no evidence of damages and consequently nothing upon which a verdict for any amount could rest, and that, in any event, the judgment is excessive and not supported by the testimony. In a case of this character, the measure of damages is the difference between the value of the property transferred at the time of the sale and what its value would have been if it had been as represented. *Parkhurst v. Elliott*, 103 Wash. 89, 173 Pac. 731. The trial court instructed the jury that if they found that the respondents were entitled to recover, then "the measure of damages is the difference between the value of the property transferred at the time of the sale and what its value would have been had it been as represented." The appellants concede that this instruction properly stated the law. The only testimony of the respondents with reference to their damage is their assertion that the apartments were not rented as represented and that the property which they purchased would not make a net profit of four hundred

dollars a month, or any profit whatsoever, and that the furniture which they purchased was worth between two thousand five hundred dollars and three thousand dollars. They did not offer any testimony as to the value of the leasehold interest. The respondents did not introduce any direct testimony concerning the value of the property as it was transferred to them and its value had it been as represented. It is probable that from this evidence the jury would be justified in finding that the property was of no substantial value and in returning a verdict for the amount which the respondents had already paid, to wit, two thousand dollars, but we are unable to see that there is any testimony in the case that would support a judgment for any greater sum. As we have stated, the measure of damages is not the loss of the promised net profits, but the difference in the value of the property delivered and what its value would have been had it been as represented. To a considerable extent the respondents seem to have tried their case upon the assumption that, because there would not be any net profits, they would be entitled to damages at the rate of four hundred dollars a month for three years, the term of the lease. But this is not the correct measure.

We do not find any merit in the other assigned grounds for reversal.

For the reasons given, we are of the opinion that the judgment cannot stand. If the respondents elect to accept a reduction of the verdict to two thousand dollars, plus interest from the time of payment, then the court is instructed to enter such a judgment. Otherwise, a new trial should be awarded. The appellants will recover their costs in this court.

MACKINTOSH, C. J., TOLMAN, PARKER, and ASKREN, JJ., concur.