[No. 34135. Department Two. November 29, 1957.]

O. E. MARR *et al.*, *Respondents*, v. ERNEST H. COOK *et al.*,
*Appellants.*[1]

[1]Reported in 318 P. (2d) 613.

*Sanford Clement*, for appellants.

*Fred M. Bond* and *James E. Duree*, for respondents.

HILL, C. J.—Fraud is here established by unusually clear, cogent, and convincing evidence. The measure and the proof of damages present the only difficulties of any consequence.

The defendants, Ernest H. Cook and his wife, owned and operated a nursing home, which they sold for twenty-five thousand dollars to the plaintiffs, O. E. Marr and his wife. The contract of sale contained the express, and false, representation by the sellers

". . . that said Nursing Home meets all of the requirements of the State of Washington presently in existence for the operation of such Nursing Home business."

Some six months after the purchasers had gone into possession of the property, they discovered that three of the four walls in many of the rooms in the building were covered with masonite, whereas state fire regulations for nursing homes required that they be covered with plaster or plasterboard. The purchasers made the changes necessary to meet the state's requirements, did some additional

remodeling; and then commenced this action to recover damages for the fraud.

The jury verdict was for seven thousand five hundred dollars, and a judgment was entered in that amount. The sellers appealed.

Respondents have moved to strike the appellants' brief for failure to comply with Rule on Appeal 42, and, particularly, 42 (5), 34A Wn. (2d) 44. While the motion might well be granted, we have decided to dispose of this appeal on the merits and refer to this motion to strike the brief " ' . . . merely for the purpose of suggesting to the members of the bar generally that compliance with our rules is important.' *Ericksen v. Edmonds School Dist.* (1942), 13 Wn. (2d) 398, 408, 125 P. (2d) 275." *Rettinger v. Bresnahan* (1953), 42 Wn. (2d) 631, 257 P. (2d) 633.

■ It is unnecessary to discuss again all of the elements which a purchaser must prove to be entitled to recover in an action for fraud in connection with a sale. They have been set out in almost identical form in a long line of cases beginning with *Webster v. L. Romano Engineering Corp.* (1934), 178 Wash. 118, 34 P. (2d) 428, and repeated as recently as *Swanson v. Solomon* (1957), 50 Wn. (2d) 825, 314 P. (2d) 655. The representation that the nursing home "meets all of the requirements of the State of Washington presently in existence for the operation of such Nursing Home business," was demonstrably false. That the purchasers relied upon the representation, and were entitled so to do, is established beyond cavil.

The sellers attempted to show that they made their misrepresentation in reliance on the license, which had been issued to them by the state, and contended further they did not know of the requirement that walls be covered with plaster or plasterboard. They complained because the court instructed the jury that representations to be actionable must have been known by the sellers to be false, or have been made "recklessly without any knowledge of their truth and as a positive assertion."

■ The instruction was not erroneous. A person cannot make a positive representation, which is false, and defeat

recovery because he did not know it was false, if he made the representation recklessly and carelessly without knowing whether it was true or false. *Swanson v. Solomon, supra. Holland Furnace Co. v. Korth* (1953), 43 Wn. (2d) 618, 262 P. (2d) 772, 41 A. L. R. (2d) 1166.

 Moreover, it is our view that actual knowledge of the falsity of their representations was established by clear, cogent, and convincing evidence, as was every other element of actionable fraud; and the assignment of error, predicated on the trial court's failure to grant a nonsuit, is without merit.

 Two assignments of error are concerned with the admission of letters written to the purchasers: one by the deputy state fire marshal eight months after the sale of the nursing home, and the other by the head of the licensing section of the state department of health seven months after the sale. These letters stated in substance that if the true condition of the building had been ascertained in the inspection by state officials, the license would not have been issued, and that, in fact, the building at the time of sale did not meet existing state requirements. The letters were admissible as establishing notice to the purchasers that their building did not conform to state regulations. The fact of nonconformance was established by other competent evidence, and the sellers could in no event have been prejudiced by the admission of these letters.

Three assignments of error had to do with the admission, over objection, of a specification, a blue print, and an estimate, all of which had been prepared by a construction engineer.

 This evidence was not objectionable for the reasons assigned by the sellers in the objections made, *i. e.*, that they were based on an alleged program of the purchasers to expand the facilities of the home. The testimony discloses that the exhibits were related to the work necessary to make the nursing home, as it then existed, conform to the state's requirements. We have insisted that unless the specific ground of objection to the admission of evidence is a proper ground, the trial court commits no error in over-

ruling it. *White v. Fenner* (1943), 16 Wn. (2d) 226, 133 P. (2d) 270.

The sellers did make proper objection to two items in the estimate.

The estimate, exclusive of taxes, was for items totalling $9,427.25, supposedly necessary to make the building conform to state requirements. One item of two thousand five hundred dollars (for loss due to vacancy and inconvenience during the work) was based on hearsay; and one item for five hundred and fifty dollars (a new fire alarm system) was never established as being necessary to meet state requirements. These two items should have been stricken from the estimate, and the taxes recomputed. The purchasers' attorney agreed, before the jury, that the item of two thousand five hundred dollars would have to be established by Mr. Marr's testimony. The jury obviously did not bring in a verdict based on this estimate. We are not persuaded that the admission of the estimate was prejudicial, except to the extent hereinafter indicated.

Exhibit 12 is the bill of the electrical contractor for the work which he did, supposedly for the purpose of making the building conform to. the state's regulations. This was the only evidence presented to the jury of actual expenditures. It contained an item of four hundred and fifty dollars for the item to which we have just referred, a new fire alarm system. It will be remembered that this was listed in the estimate at five hundred and fifty dollars.

We are satisfied that there was no evidence to take this expenditure of four hundred and fifty dollars to the jury, as being necessary to make the property conform to the representations of the sellers. It should have been stricken from the bill, and it was error to admit it in evidence over the sellers' objection. For reasons hereinafter discussed, we are convinced that this error was not prejudicial.

The bid of a painter, who never saw the premises and whose bid was not accepted, was inadmissible; however, we are convinced that the error was not prejudicial.

█ Another assignment of error is related to the admission, over objection, of copies of two letters directed to the

person from whom the sellers had acquired the nursing home. Each clearly sets forth the state's requirements relative to plasterboard on the walls of the rooms in the nursing home. Copies of the letters had been furnished to the sellers during the time they owned and operated the nursing home. The letters were offered to rebut the sellers' contention that they had no notice that plasterboard was required, and they were admissible for that purpose.

We come now to the issue of damages.

■ The sellers point out, in their brief as appellants, that the proper measure of damages in a case of this kind is "benefit of bargain"; *i. e.*, the difference between the value of the property, if it had been as represented, and its actual value at the time of the sale. *Salter v. Heiser* (1951), 39 Wn. (2d) 826, 239 P. (2d) 327, and cases cited therein. It is likewise pointed out in that case that the "benefit of bargain" rule is not the exclusive measure of damages that may be applied.

It may be that the sellers regarded "benefit of bargain" as the correct measure of damages; however, they never saw fit to bring such a contention to the attention of the trial court at any time during the trial, either by objection —on that specific ground—to the evidence of damages offered by the purchasers, or by a requested instruction, or by an objection to the instruction on damages given by the trial court.

The only instruction given on the issue of damages was as follows:

"Instruction No. 8. You are further instructed that if you return a verdict for the plaintiff, then in the determination of the amount of the verdict returned you must not indulge in speculation or conjecture, nor should you be swayed by sympathy or prejudice. You must be guided wholly and entirely by the evidence and the law. *The law only permits such damages to be given as will pecuniarily compensate a person for the injuries sustained by that person.* Each party litigant is entitled to equal and exact justice at your hands and to a fair and dispassionate consideration of the entire case. Damages, if any are awarded, must be reasonable, and not to exceed the sum of $14,000."

(Italics ours. The italicized sentence is the only suggestion made to the jury as to how they were to measure damages.)

■ There having been no objection to this instruction, and no request for any additional instructions on the issue of damages, this instruction became the law of the case. *State v. Henker* (1957), 50 Wn. (2d) 809, 812, 314 P. (2d) 645; *Cartledge v. Allen* (1946), 25 Wn. (2d) 300, 302, 170 P. (2d) 660; *Braack v. Bailey* (1948), 32 Wn. (2d) 60, 62, 200 P. (2d) 525; *Peters v. Dulien Steel Products* (1952), 39 Wn. (2d) 889, 892, 239 P. (2d) 1055.

With this background, we examine the assignment of error relative to damages. It reads: "Jury was in error in rendering a verdict in the sum of $7,500.00 damages based on the evidence introduced in the case."

We are not confronted with any conflict between the theory of "benefit of bargain" or "out-of-pocket-loss." We are simply required to determine whether, on any theory not inconsistent with the instruction given, the jury could find from the evidence that the purchasers had established it would require seven thousand five hundred dollars to "pecuniarily compensate" them "for the injuries sustained."

We have no difficulty in finding evidence to sustain the verdict.

The estimate of the witness Benjamin F. Spoor relative to the cost of making the nursing home comply with state requirements as shown by exhibit 11 (omitting items of $2,500 and $550 not properly included therein), was $6,377.25. That amount, plus three per cent for unemployment compensation, industrial insurance, etc., came to $6,568.57; and that sum, plus the three per cent sales tax, totalled $6,765.63. Each item, making up the $6,377.25, was supported by the testimony of Mr. Spoor as to the necessity therefor, and the reasonableness thereof.

The evidence as to damage caused by vacancy during the remodeling was that the purchasers charged one hundred and forty-five dollars a month to those occupying the home; that some months there had been three or four beds empty, because of the work being done to conform to state regulations; and the work took more than eight months.

The best that we can make of this extremely sketchy testimony is that "some" means more than one. We can, therefore, conclude that for at least two months there were no fewer than three beds empty, resulting in a minimum loss of eight hundred and seventy dollars attributable to vacancies occasioned by the required work.

The loss was undoubtedly considerably more, but because of the lack of certainty in the testimony, anything more than eight hundred and seventy dollars would have to be based on speculation and conjecture. That amount, added to $6,765.63, makes $7,635.63, which the jury could have found, under competent evidence, to have been necessary for the sellers to expend in order to make the property conform to the representations.

See discussion of this method of establishing damages in annotation in 124 A. L. R. at page 66. We repudiated this measure of damages in *Hunt v. Allison* (1913), 77 Wash. 58, 137 Pac. 322, but it would seem to be permissible under the instruction in this case which we have quoted, and to which, as we have indicated, no exception was taken.

If we turn to the "benefit of bargain" rule for which the sellers now contend, we have the evidence of Mr. Spoor that the nursing home was worth twenty-six thousand dollars, if it had been as represented; and that in its condition at the time of sale it was worth half of that, or thirteen thousand dollars, which would make the damages, measured by that rule, thirteen thousand dollars.

Still other evidence as to damages came from the purchaser, O. E. Marr. The contract provided that the $25,000 purchase price was divided $18,162 for the real estate and $6,838 for fixtures, furniture, and equipment. Mr. Marr testified that the value of the real estate, at the time of sale and before he made the necessary changes, was $11,000. This would represent an out-of-pocket-loss of $7,162, which, plus the other out-of-pocket-loss of at least $870 for vacancies while the necessary work was being done to make the building conform to state regulations, would give a figure of $8,032.

We are satisfied that the verdict for seven thousand five hundred dollars was well within the evidence, even if the jury included in their calculations the four hundred and fifty dollars for a fire alarm system, the evidence of which we have heretofore indicated should not have been submitted to the jury. The sellers not having established that the error which they have pointed out on this appeal was prejudicial, the judgment is affirmed. Neither party will recover costs on this appeal.

DONWORTH, ROSELLINI, and FOSTER, JJ., concur.

